611 So.2d 949 (1992)
Leo BROADHEAD and Mary L. Robinson
v.
Albert G. and Geraldine TERPENING and Romye E. and Stella M. Stockton.
No. 89-CA-0704.
Supreme Court of Mississippi.
December 31, 1992.
*950 Henry Palmer, Palmer Wright & Williamson, Earl P. Jordan, Jr., Jordan & Jones, Meridian, for appellants.
John E. Howell, Meridian, for appellees.
En Banc.
BANKS, Justice, for the court:
Here we are presented with the questions of whether the chancery court correctly determined that appellees possessed an easement of way by necessity in a private road traveling across land owned by the appellants, and if so, whether the chancery court was a proper forum for establishing an easement of way across the land of another in light of the remedy at law provided by Section 65-7-201, Miss. Code Ann. (1972). Section 65-7-201 establishes a procedure whereby private rights-of-way through the lands of another may be obtained by petitioning the appropriate county board of supervisors. We hold that the chancery court correctly determined that the appellees possessed an easement by necessity in the subject road. In addition, we hold that the chancery court was an appropriate forum for establishing such an easement of way, because § 65-7-201 does not provide an adequate alternative remedy at law. Therefore, we affirm the judgment of the chancery court.

I.
This case is before this Court on appeal from the Chancery Court of Clarke County, where on August 18, 1988, the appellees, plaintiffs below, Albert and Geraldine Terpening and Romye and Stella Stockton, filed a complaint against appellants, Leo Broadhead, Mary L. Robertson, Louella Mays, defendants below, and the heirs at law of Rosetta Bennett, alleging that plaintiffs were entitled to use an alleged public road across defendant's property. The complaint alleged that the road had been maintained by a Clarke County Supervisor and had been used by the public for more than ten years prior to the erection of the gate on the property by Broadhead, preventing ingress and egress.
The complaint also alleged a prescriptive easement and, alternatively, an easement of necessity. Plaintiffs demanded a judgment which would prohibit and enjoin defendants from blocking the right-of-way or, in the alternative, a finding that the court find that an easement of necessity existed over the lands and an assessment of the fair market value of the easement. Appellants answered denying that plaintiffs were entitled to relief and moved to dismiss the complaint because there existed an adequate remedy at law.
Terpening, thereafter, on November 7, 1988, caused a petition to be presented to the board of supervisors to establish his right to use the road. Three members of the board examined the property and refused to resolve the matter on the basis that the petitioners did not comply with the notice requirements of § 65-7-57, Miss. Code Ann. (1972); the road in question did not appear to be a public road; and the fact that no other parties requested the laying out of a public road. Terpening did not pursue the effort before the board and filed no appeal from its last action, which was taken on November 10, 1988.
Defendants never presented their motion to dismiss before trial. At trial, the issue arose in connection with an objection to a *951 question during plaintiffs' case. Counsel for defendants indicated that his contentions concerning an adequate remedy at law would be presented at the close of the plaintiffs' case as a part of a motion to dismiss, pursuant to Rule 41(b), Miss. R.Civ.P. The chancellor questioned this procedure and expressed an opinion that defendants may have waived this issue by failing to present it before trial. Defendants' motion to dismiss at the close of plaintiffs' case was overruled without further comment.
The chancellor held on April 3, 1989, following the trial on that day, that the issue here involved has been legislatively committed to the board of supervisors by virtue of Miss. Code Ann. § 65-7-57 et seq. (Supp. 1992). The court recognized that it was not designated by statute to hear such cases, grant easements and fix damages for such easements or, even to hear appeals from the board of supervisors, which go to the circuit court. The chancellor also concluded that the evidence failed to show that the portion of the road in question was a public road by prescription or otherwise.
Nevertheless, the court found that when the Ratcliffs sold their property, which was landlocked, the sale, under our law, carried with it an easement to get to the property so sold. It held that the easement enured to the benefit of the present and subsequent owners, as well as, the original grantees:
I don't think that the law will make sense for the Ratcliffs to sell property to one party and then nobody could get to the property provided there is a right of way there. There is no travel way, and no way to get to the property, then the grantors are charged with an easement that must be located in a readily accessible place to get to and from the grantees property. If there is a travelway already located, then the grantee must use it, even though it may not be the best way, even though it may not be the shortest way, even though it may not be the smoothest way, and there certainly is no guarantee that the county or anybody else will maintain it. The grantee can use it and the grantor cannot require him to go elsewhere. That's what it says in the case of Pleas v. Thomas, [75 Miss. 495] 22 So. 820.
Subsequent to the opinion, the appellants filed a motion for relief from judgment and motion to alter or amend judgment, alleging discovery of additional evidence, and complained of the lack of a legal description for an easement, and the failure of the appellees to plead for the relief granted in violation of Rule 8, Miss.R.Civ.P. The court then entered a supplementary opinion and judgment directing the parties to confer and stipulate the location of the decreed easement. That judgment further provided that should the parties be unable to agree by May 19, 1989, the provisional judgment embodied within the opinion would be deemed the judgment of the court. That provisional judgment appointed a surveyor to establish the boundaries of the easement within the parameters generally described by the court.
Broadhead and Robinson filed a timely appeal to this Court. Terpening and Stockton filed a timely cross-appeal.

II
Broadhead owns a parcel of land known as the Bluegrass Park. It is a ten-acre strip of land consisting of two-acre to five-acre plots, having combined dimensions of 165 feet east to west by 2623.5 feet north to south. Defendants, Bennett heirs and Mays, own similar plots to the west of Broadhead with the Bennetts' plot adjacent to Broadhead and the Mays' plot adjacent to Bennett. Defendant Robinson owns a one-acre plot in the center of the five-acre plot adjacent to Broadhead on the east. Plaintiffs own a similar ten-acre plot adjacent to and west of the Mays' plot. All of this property was at one time owned by the Ratcliffs. It was divided in 1979 as shown on the plat annexed to this opinion as an appendix. On that plat the Broadhead property is shown as parcels 12 and 19 and the plaintiffs' property as parcels 9 and 22.
Broadhead uses his land to conduct blue-grass music festivals. He purchased the property from Willie Ratcliff around November *952 3, 1986. To get to his property, Broadhead travels across Mary Robinson's property, along a traveled lane, which is the "road" in question. It is clear that, historically, the county maintained this road up to a point near the old Ratcliff house, but not beyond. That house was placed on the property of the Bluegrass Park. More specifically, the witnesses stated that the road ended at a large mulberry tree, which is just before the gate to the now Bluegrass Park. The Ratcliff house was where the gate is now. Beyond this point is the subject dispute.
Broadhead asserted that he had a right-of-way or easement across Robinson's property. The point of contention is a gate on Robinson's property. It was at Broadhead's direction that the gate was placed on that property by Terpening, who did work for Broadhead from time to time. Terpening testified that he placed the gate on the property for Broadhead and was given a key to the lock. Several months later, Terpening was on his property and was bringing something out, when he decided to go around by a brush pile, instead of unlocking the gate and travelling through it as usual. Broadhead later asked for the key back "since he [Terpening] is not going to use it anymore." Terpening asserts that now he does not have a way to get on his property. If the gate were not on the property, he could drive down the road to get to his property.
It is undisputed that until April 1979 all of the property in question was owned by a single family and was undivided. It is also undisputed that the "road" ends on this property. It does not traverse the property owned by the Ratcliffs to other property or another road. Whether deemed public or private, it has always ended somewhere on the Ratcliffs' property. The Ratcliff heirs, who were witnesses, testified unequivocally that the "road" ended at the mulberry tree and that any trail beyond that was used solely by the family and those coming upon the family lands with permission. Although one witness testified that there were houses past that point that were served by the road, he had no knowledge of who resided in such houses. No other witnesses, most of whom were more familiar with the property, agreed that there were other houses.

III.

a.
Broadhead contends here that the chancellor erroneously awarded relief not prayed for in the pleadings; failed to require plaintiffs to pursue their adequate remedy at law; and, rendered a decision unsupported by substantial evidence. It is clear that no claim of an easement by prescription or that the road in question was a public road is sustainable on this record. Until 1979 the road led no where that the public had a right to go, except by permission of the Ratcliffs. Any public use before 1979 was permissive. The period of prescription, ten years, beginning in 1979, had not elapsed at the time that this controversy arose. The road was never dedicated to the public. There is no credible evidence that any county work was done on the road. The only evidence that the road was public is a map showing the road extending into the Mays' property and labeled with a public road number. All admit that the road is public to the mulberry tree, however. There is no evidence whatever of the basis for the map showing a public road extending past that point. Nor is there evidence of when the map was prepared, by whom, or for what purpose.
It follows that if plaintiffs are to prevail, it is upon the ground assigned by the chancellor  an easement by necessity.

b.
Broadhead's initial contention is that the chancellor granted relief for which there was no prayer. Plaintiffs clearly prayed alternatively for an easement by necessity. While it is true, as Broadhead asserts, that plaintiffs failed to particularly describe any easement in their pleadings, this failure is not fatal under our modern rules of pleading. Rule 8, Miss.R.Civ.P. Broadhead's contention seems based on a belief that an easement by implication is somehow different from an easement by necessity, when in reality they are the *953 same. Taylor v. Hays, 551 So.2d 906, 908 (Miss. 1989); Pleas v. Thomas, 75 Miss. 495, 500, 22 So. 820 (1897).
The type easement in existence has been named an easement by implication in some cases and in other cases an easement by necessity. We think that, here, we are confronted with an easement by necessity, arising by implication.
Taylor at 908.
The complicating factor here is that plaintiff, in praying for an easement by necessity, also prayed for the assessment of a reasonable price for such an easement. They alleged specifically that they were entitled to an "easement by necessity ... after paying a reasonable price for this for this (sic) right to the defendants." The relief described is consistent with that afforded through the board of supervisors by statute. See Miss. Code Ann. § 65-7-201 (1972). It is not consistent with a claim for an easement implied by the grant of landlocked property because such an easement is by implication supported by the consideration paid for the original grant. See Pleas, 75 Miss. at 500-501, 22 So. at 821; Bonelli v. Blakemore, 66 Miss. 136, 142, 5 So. 228, 230 (1888). Earlier, plaintiff had asserted that the existing road was the only access to their lands. The chancellor found this to be so, and concluded that the pleadings so drawn fairly put defendants on notice of a claim for an easement by implication.
By their pleadings, plaintiffs were obliged to prove necessity. Defendants were on notice to meet proof on that issue. While it is true that the proof of necessity for an implied easement is greater than that required for invocation of the statutory remedy, Compare Wills v. Reed, 86 Miss. 446, 38 So. 793, 795 (1905), and Quinn v. Holly, 244 Miss. 808, 813, 146 So.2d 357, 359 (1962), defendants are surely not prejudiced by that fact. An implied easement also requires proof of a common source, a fact irrelevant to the statutory remedy. Miss. Code Ann. § 65-7-201 (1972). Here the proof of a common original source for the tracts in question is undisputed and indisputable. As pled, the plaintiff contemplated paying for the easement. That fact, however, did nothing to affect defendants' preparation as to other issues.
Moreover, during trial, plaintiff moved to amend his pleadings to include a claim for an easement by implication or by prescription. That motion was granted by the chancellor without objection from defendant. Miss.R.Civ.P. 15 places the granting of motions to amend in the sound discretion of the lower court and provides that the court is to be liberal in granting permission to amend, when justice so requires. Miss. R.Civ.P. 15(b); and Red Enterprises, Inc. v. Peashooter, Inc., 455 So.2d 793, 796 (Miss. 1984). The lower court also has the discretion to grant a continuance to the nonmovant to allow him to meet the evidence, if that party objects and demonstrates prejudice to the court. Miss. R.Civ.P. 15(b). Here, there was no objection by defendants to plaintiffs motion to amend. Furthermore, in granting an easement of way by necessity to plaintiffs, the chancery court specifically found that defendants had sufficient notice of the exact relief that was being sought by plaintiffs. Under these circumstances, we can find no manifest error with the type of relief granted by the chancery court.

c.
It is well-established that an easement by necessity arises by implied grant when a part of a commonly-owned tract of land is severed in such a way that either portion of the property has been rendered inaccessible except by passing over the other portion or by trespassing on the lands of another. E.g., Taylor v. Hays, 551 So.2d 906, 908 (Miss. 1989); Medina v. State of Mississippi ex rel. Sumner, 354 So.2d 779, 784 (Miss. 1978); and Pleas v. Thomas, 75 Miss. 495, 500, 22 So. 820, 821 (1897). Such easements or rights-of-way by necessity last as long as the necessity exists and terminate when other access to the landlocked parcel becomes available. E.g., Taylor, 551 So.2d at 908; and Thornton v. McLeary, 161 Miss. 697, 702-703, 137 So. 785, 786-787 (1931).
*954 All the parcels now owned by plaintiffs and defendants were once commonly-owned under one estate by the Ratcliffs. It is undisputed that there is only one established way of ingress and egress to the Terpenings' property. That lone way requires traversing the the property now owned by the defendants. To establish any other way of ingress or egress requires traversing the property of others. Clearly then, under the principles stated above, when the Ratcliffs parceled up their property and sold it to others, an easement by necessity was created for the person(s) who purchased the portion of the estate now owned by the Terpenings.
Those persons were not the Terpenings, however. Further, the Broadheads were not the parties responsible for dividing up the old Ratcliff estate in such a way that the portion now held by the Terpenings was rendered inaccessible except by passing over other portions of the formerly unified lands. Thus, the issue arises whether an easement or right-of-way by necessity runs with the land, thereby creating a vested right of access for successive holders of the dominant tenement and binding successive holders of the servient tenement to honor that right. This Court has never had occasion in the past to rule on this question. Today, we hold that easements of way by necessity are appurtenant to the dominant tenement and run with the land.
Although never before broached by this court, this point of law is a generally accepted common law principle. The caselaw of our sister states bears this out. See Carver v. Jones, 28 Ark. App. 288, 773 S.W.2d 842, 845 (1989) ("Easements by necessity and by implication are appurtenant to the dominant estate and run with land.") (citing Brandenburg v. Brooks, 264 Ark. 939, 576 S.W.2d 196 (1979)); Pencader Associates, Inc. v. Glasgow Trust, 446 A.2d 1097, 1100 (Del. 1982) ("... the right to a way of necessity can lie dormant, be passed from one owner of the dominant estate to successors in interest, and be exercised in futuro; Hancock v. Henderson, 236 Md. 98, 202 A.2d 599, 603 (1964) ("... an easement [of way by necessity], being appurtenant, passes with each conveyance to subsequent grantees."); Vanderwerff v. Consumers Gas Co., 166 Pa.Super. 358, 71 A.2d 809, 811 (1950) ("Easements by implication require no deed or writing to support them and they pass by a conveyance of the estates to which they are appurtenant."); and Smith v. Virginia Iron, Coal & Coke Co., 143 Va. 159, 129 S.E. 274, 276 (1925) ("The right of way ... acquired [by necessity] remains vested in the grantee and his successors in title so long the necessity therefor continues to exist.").
Having determined that the Terpenings do possess a right-of-way across their neighbors' lands, we must determine the location of that easement. In Taylor v. Hays, 551 So.2d at 909, we said, "it is well established that a way [of] necessity should be located so as to be the least onerous to the owner of the servient estate while, at the same time, being a reasonable convenience to the owner of the dominant estate. (citing Stair v. Miller, 52 Md. [App. 108], 447 A.2d 109)." In the instant case, the chancellor rejected the established road as unnecessarily interfering with the Broadheads' business. The chancellor also rejected a proffered alternative suggested by the Broadheads and, after inspecting the land, established a way deemed most suitable for all concerned. There is no showing that the chancellor was manifestly in error in this regard.

d.
Broadhead's next contention is that the chancery court's judgment should be reversed because Miss. Code Ann. § 65-7-201 provides an adequate remedy at law. Broadhead is correct in his underlying premise that where a complete and adequate remedy exists at law for a plaintiff's claim, the chancery courts should not intervene to award equitable relief. E.g., Moore v. Sanders, 558 So.2d 1383, 1385 (Miss. 1990); and Partee v. Kortrecht, 54 Miss. 66, 72 (1876). In the instant case, however, § 65-7-201 does not provide a complete and adequate alternative remedy to the recognition and enforcement of the *955 Terpening's easement of way by necessity. Section 65-7-201 provides:
When any person shall desire to have a private road laid out through the land of another, when necessary for ingress and egress, he shall apply by petition, stating the facts and reasons, to the board of supervisors of the county, which shall, the owner of the land being notified at least five days before, determine the reasonableness of the application. If the petition be granted, the same proceedings shall be had thereon as in the case of a public road; but the damages assessed shall be paid by the person applying for the private road, and he shall pay all the costs and expenses incurred in the proceedings.
Miss. Code Ann. § 65-7-201 (1972). Under this statutory scheme for acquiring access, the plaintiff must compensate the landowner over whose land he is given a right of way by paying the landowner the fair value of any land taken and any of damage that might accrue to the remainder of the landowner's property. Alpaugh v. Moore, 568 So.2d 291, 295 (Miss. 1990); and Quinn v. Holly, 244 Miss. 808, 812, 146 So.2d 357, 358 (1962). In addition, the plaintiff must pay for all the costs and expenses incurred in proceedings before the board of supervisors. If, on the other hand, it were determined that the plaintiff possessed an easement by necessity, he would not have to pay for any of these things. As we stated above, an easement of way by necessity is a right of access that is appurtenant to the dominant parcel and travels with the land, so long as the necessity exists. By acquiring the dominant estate, one has already paid for and procured the legal right of access to and from that parcel. For this reason, we hold that the § 65-7-201's procedure for establishing a private right-of-way is not a complete and adequate alternative remedy to the recognition and enforcement of an easement of way by necessity. Consequently, § 65-7-201 was not a bar to the the chancery court's granting of appropriate equitable relief in this case.

e.
Finally, defendants contend that the proof does not support the conclusions of the chancellor. This contention is based on a misapprehension of the law. Once the hurdles of proper pleading and adequate remedy at law are cleared, the question is whether the proof is sufficient that plaintiffs have no access to their property, save over the land of others, and that defendants and plaintiffs derive their lands from a common source giving rise to an implication of an easement. The proof of these facts is more than ample. The failure to prove value is of no moment because proof of value is not required to support an easement by necessity.[1]
We have reviewed Stocktons' and Terpenings' cross-appeal concerning the location of the road, and find the chancellor's determination was correct. Accordingly, we affirm the judgment of the chancery court on direct and cross-appeals.
AFFIRMED.
ROY NOBLE LEE, C.J., and PRATHER and SULLIVAN, JJ., concur.
PITTMAN, J., dissents with separate written opinion joined by HAWKINS and DAN M. LEE, P.JJ.
DAN M. LEE, P.J., dissents with separate written opinion joined by PITTMAN and McRAE, JJ.
ROBERTS, J., not participating according to Supreme Court Internal Rules.
PITTMAN, Justice, dissenting:
Procedurally speaking, this suit should not have been heard in chancery court, as there is an adequate remedy at law in which to achieve an easement by necessity. Section 65-7-201 specifically states that the proper procedure to acquire an easement *956 by necessity is to file a petition with the board of supervisors of that particular county, stating the facts and reasons for the easement. Miss. Code Ann. § 65-7-201 (1972). Since 1905, this Court has recognized that the proper manner for seeking a private way across neighboring land was by petitioning the county board of supervisors. Alpaugh v. Moore, 568 So.2d 291, 295 (Miss. 1990); Wills v. Reid, 86 Miss. 446, 453, 38 So. 793, 795 (1905). Although Terpening filed a petition with the board of supervisors, he abandoned this procedure when the board of supervisors failed to resolve the matter due to a question of proper notice. Rather than following the statutorily created remedy at law, Terpening sought to circumvent this remedy by seeking action in chancery court. Terpening should have exhausted his remedy at the board of supervisory level before seeking judicial assistance. Therefore, I respectfully dissent.
HAWKINS and DAN M. LEE, P.JJ., join this opinion.
DAN M. LEE, Presiding Justice, dissenting:
Because I believe Miss. Code Ann. § 65-7-201 provides an adequate remedy at law under the facts in this case, I respectfully dissent. Said Section provides:
When any person shall desire to have a private road laid out through the land of another, when necessary for ingress and egress, he shall apply by petition, stating the facts and reasons, to the board of supervisors of the county, which shall, the owner of the land being notified at least five days before, determine the reasonableness of the application. If the petition be granted, the same proceedings shall be had thereon as in the case of a public road; but the damages assessed shall be paid by the person applying for the private road, and he shall pay all the costs and expenses incurred in the proceedings.

Miss. Code Ann. § 65-7-201 (1972).
I agree with the majority that "the Broadheads were not the parties responsible for dividing up the old Ratcliff estate in such a way that the portion not held by the Terpenings was rendered inaccessible except by passing over other portions of the formerly unified lands" but hasten to point out that the Broadheads should not be thereby punished by taking their lands for an easement by necessity without due compensation under Art. 3, § 17, Miss. Const. (1890) which provides in pertinent part:
Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; ...
Article 3, § 17, Miss. Constitution (1890).
It is apparent that the majority, by holding "that easements of way by necessity are appurtenant to the dominant tenant and run with the land" has successfully evaded the payment of any compensation to Leo Broadhead, the dominant owner, there being absolutely no compensation for the easement granted in this case.
Therefore, I would reverse the ruling of the Chancellor and thus, allow the Terpenings (appellees) to file under § 65-7-201 as it does provide an adequate remedy at law. Further, it provides the defendant (Broadhead) a means of compensation guaranteed by the Constitution of the State of Mississippi (Art. 3, § 17) and the United States Constitution which in pertinent part provides:
nor shall private property be taken for public use, without just compensation.
Amendment V, U.S. Constitution.
In the alternative, I would do as we did in Warwick v. Pearl River Valley Water Supply District, 246 So.2d 525 (Miss. 1971), i.e., affirm as to the right of the Terpenings "to a way of necessity" but remand to the Chancery Court for the designation of the lane or road as the sole way of necessity for ingress and egress and for the fixing of proper compensation to be paid by the Terpenings to the Broadheads for this right of way over the land. Warwick, 246 So.2d at page 529.
PITTMAN and McRAE, JJ., join this opinion.
NOTES
[1] Defendants rely on Warwick v. Pearl River Valley Water Supply District, 246 So.2d 525, 529 (Miss. 1971). There this court recognized that the "question presented is novel and does not afford a just solution by strict adherence to the law." Id. at 528. Citing the statutory provision as evidence of public policy and without fully explaining a legal basis, the court allowed access over the lands of the Pearl River Valley Water Supply District and granted compensation to the district. That decision is unique to the facts there presented.